NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 3 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10091 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-00047-LRH-CLB-1 |
| v. |  |
| ERIC ROMERO-LOBATO, | MEMORANDUM* |
| Defendant-Appellant. |  |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted June 9, 2023
San Francisco, California

Before: MILLER and KOH, Circuit Judges, and LYNN,** District Judge.
Dissent by Judge KOH.

Eric Romero-Lobato appeals from the district court's denial of his motion to

dismiss his indictment for illegal reentry in violation of 8 U.S.C. § 1326. We have

jurisdiction under 28 U.S.C. § 1291. We affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Barbara M. G. Lynn, United States District Judge for
the Northern District of Texas, sitting by designation.

We review de novo the district court's ruling on a motion to dismiss an indictment, *United States v. Bastide-Hernandez*, 39 F.4th 1187, 1190 (9th Cir. 2022) (en banc), and we review the district court's factual findings for clear error, *United States v. Camacho-Lopez*, 450 F.3d 928, 929 (9th Cir. 2006). We may set aside the district court's findings only if we have "a definite and firm conviction that a mistake has been committed." *United States v. Hylton*, 30 F.4th 842, 846 (9th Cir. 2022) (quoting *United States v. Perkins*, 850 F.3d 1109, 1115 (9th Cir. 2017)).

Romero-Lobato contends that his prior removal order was invalid. To defeat a charge of illegal reentry by collaterally attacking a removal order, a defendant must show, among other things, that "the entry of the order was fundamentally unfair," 8 U.S.C. § 1326(d)(3), which in turn requires him to establish, first, that his "due process rights were violated by defects in his underlying deportation proceeding, and," second, that "he suffered prejudice as a result of the defects," *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (citation omitted).

1. Romero-Lobato argues that the INS provided him inadequate notice of his deportation proceedings. Due process requires that "the notice afforded aliens about deportation proceedings . . . be reasonably calculated to reach them." *Dobrota v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002).

2

a. Romero-Lobato asserts that he never received notice of his order to show cause, but the district court found that he in fact received notice on two separate occasions. First, the court found that an INS official personally served an order to show cause on Romero-Lobato while he was in juvenile detention. Romero-Lobato objects that the INS recorded neither his fingerprint nor his signature, but the officer explained that no ink for fingerprinting was available and that Romero-Lobato refused to sign. We see no clear error in the district court's decision to credit the officer's explanation.

Second, the district court found that Romero-Lobato received another copy of the order to show cause that was transmitted by certified mail. The INS mailed the order to Romero-Lobato at an address that contained the right street number and street name but, according to Romero-Lobato, stated an incorrect apartment number and ZIP Code. The district court found that Romero-Lobato nevertheless received the mailing because an "Eric Lovato" signed for delivery, and his signature bore a strong resemblance to that of "Eric Romero," who signed for an order that the INS mailed to the same address months later. The district court did not clearly err in concluding that the signature reflected actual receipt by Romero-Lobato.

b. Romero-Lobato next argues that he received inadequate notice of the time and date of his hearing. As the INS did not include scheduling information on the

order to show cause, it prepared a separate document with the time and date. The record does not reflect whether the INS mailed that document to Romero-Lobato. But before the district court, Romero-Lobato conceded that "[o]n March 27, 1996, the immigration court sent notice that Mr. Romero-Lobato's case was scheduled for a master calendar hearing on July 31, 1996." Romero-Lobato insisted that "[t]he mailing was sent to the same invalid home address" used for the order to show cause. The district court found that "the record firmly establishes that defendant received notice of his removal hearing." In so finding, the court referenced its earlier finding that Romero-Lobato received mail at the address claimed to be invalid.

Although Romero-Lobato stated that the notice of hearing went to the wrong address, he did not argue below that the notice of hearing fell short of due process. Our review would ordinarily be for plain error, *see* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731–32 (1993), but because the government waived Romero-Lobato's forfeiture and disclaimed the plain-error standard, we apply clear-error review, *see United States v. Murguia-Rodriguez*, 815 F.3d 566, 574 (9th Cir. 2016). The district court did not clearly err.

As we have explained, Romero-Lobato concedes that notice was mailed, and his only argument is that the address to which it was mailed was faulty. In a finding we cannot disturb, the district court concluded that Romero-Lobato twice

signed for delivery of mail sent to that same address. For our purposes, then, Romero-Lobato has effectively conceded that his notice of hearing was mailed to an address where he could be reached. Based on that concession, it was not clear error for the district court to conclude that Romero-Lobato actually received the mailing.

c. Romero-Lobato also argues that, even if the various documents were all validly served on him, his deportation proceedings were still flawed because the INS failed to give notice to his mother. Romero-Lobato relies on *Flores-Chavez v. Ashcroft*, 362 F.3d 1150 (9th Cir. 2004), arguing that because he was a minor at the time of the proceedings, the INS needed to give notice to his mother as well. But our decision in *Flores-Chavez* requires notice only to guardians into whose custody a minor is formally released, and Romero-Lobato was not released into his mother's custody. *See Cruz Pleitez v. Barr*, 938 F.3d 1141, 1146 (9th Cir. 2019).

2. Alternatively, Romero-Lobato argues that the proceedings were fundamentally unfair because his order to report affirmatively misled him by stating that "[a] review of your file indicates there is no administrative relief which may be extended to you." As the government now concedes, that statement was incorrect. *See United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012).

Although Romero-Lobato has established a due-process violation, that is only half the inquiry, because Romero-Lobato can demonstrate fundamental

5

unfairness under section 1326(d) only if he also shows that he suffered prejudice as a result of being misled. To show prejudice, Romero-Lobato must show, at minimum, that he could have had his in-absentia removal order rescinded and could thereby have been considered for further relief. *See* 8 U.S.C. §§ 1252b(e)(1), (e)(5) (1994) (repealed 1996). And to demonstrate that his removal order warranted rescission, he would need to show that he suffered from "exceptional circumstances" or received inadequate notice. *Id.* § 1252b(c)(3).

Romero-Lobato argues that his youth at the time of the hearing qualifies as an exceptional circumstance. But that term encompasses only circumstances "such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances." 8 U.S.C. § 1252b(f)(2) (1994) (repealed 1996). We cannot conclude that Romero-Lobato's age—he was 16 at the time of his removal hearing—was an impediment comparable to serious illness or the death of a relative.

As for the other basis for rescission, section 1252b(c)(3)(B) allows for a motion to reopen if "the alien *demonstrates* that the alien did not receive notice in accordance with subsection (a)(2)." (emphasis added). In turn, subsection (a)(2) requires notice either by personal service or certified mail. *See* 8 U.S.C. § 1252b(a)(2)(A) (1994) (repealed 1996). For reasons already discussed, we cannot

6

disturb the district court's findings that the order to show cause was both personally served on and sent by certified mail to Romero-Lobato.

We also cannot disturb the district court's finding that Romero-Lobato did not demonstrate inadequate notice of the time and place of his hearing. As the district court noted at the outset, Romero-Lobato "fail[ed] to address" how the misleading order to report deprived him of an opportunity to make an argument based on inadequate notice under section 1252b(a)(2), "which under Local Criminal Rule 47-3, constitutes consent to denial of the argument." Nevertheless, the district court went on to observe that "[t]he record is silent on why defendant did not show up for his removal hearing," adding that Romero-Lobato "does not provide any explanation for his absence in his brief."

To be sure, the record does not contain evidence that the notice of hearing was served in the manner required by section 1252b(a)(2). (Although Romero-Lobato conceded that the notice was "sent" in a "mailing," he did not say whether it was sent by *certified* mail.) But because the record was silent—and, as noted, Romero-Lobato did not argue the point—the court was entitled to conclude that Romero-Lobato had not shown that he would have been able to "demonstrate[]" inadequate notice so as to be entitled to rescission. 8 U.S.C. § 1252b(c)(3)(B) (1994) (repealed 1996). In other words, the gaps in the record do not mean that additional findings are required; they simply mean that Romero-Lobato did not

7

meet his burden. We therefore have no "definite and firm" conviction that the district court erred. *Hylton*, 30 F.4th at 846 (citation omitted).

**AFFIRMED.**

*United States v. Romero-Lobato*, No. 22-10091

KOH, Circuit Judge, dissenting.



I agree with the majority's conclusion that the district court did not clearly err in finding that the service of Romero-Lobato's order to show cause satisfied due process and that Romero-Lobato's order to report for deportation affirmatively misled him by telling him that "there is no administrative relief which may be extended to you" and thus constituted a due process violation. I part ways with the majority, however, on two issues, both related to Romero-Lobato's notice of hearing. First, I would remand for the district court to consider whether Romero-Lobato's due process rights were also violated by the service of his notice of hearing. Second, I would remand for the district court to consider, for purposes of prejudice, whether Romero-Lobato's notice of hearing was sent consistent with statutory requirements such that he has a plausible ground for relief from deportation. Because the majority does neither, I respectfully dissent.

1.      The majority concludes that Romero-Lobato stated, and the district court found, that Romero-Lobato's notice of hearing was mailed. But Romero-Lobato's statement and the district court's finding say nothing about whether notice was adequate for purposes of due process. *See Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) ("An alien does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied.

Rather, due process is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien."). The majority suggests that Romero-Lobato's statement is sufficient for the presumption of regularity to apply, but none of the relevant requirements have been met. We have held that "invocation of a presumption of notice requires the INS to prove that the notice (1) was properly addressed; (2) had sufficient postage; and (3) was properly deposited in the mails." *Busquets-Ivars v. Ashcroft*, 333 F.3d 1008, 1010 (9th Cir. 2003). In this case, the notice of hearing was not properly addressed—it included the incorrect zip code and an allegedly incorrect unit number. Nor does the record reflect that the notice of hearing had sufficient postage or was properly deposited in the mails. Unlike Romero-Lobato's order to show cause, for which the record contains copies of certified mail receipts signed by Romero-Lobato, the record related to Romero-Lobato's notice of hearing includes no certified mail receipts, no mailing envelope, no signature, and no postage. In fact, at oral argument, the government conceded that none of this, or any evidence of mailing, was in Romero-Lobato's immigration file ("A-file").

Not only does Romero-Lobato's statement and the district court's finding not satisfy any of the three requirements, but Romero-Lobato's admission actively disputes that the notice of hearing was properly addressed. Although the majority suggests that the address was not invalid because the district court found that

2

Romero-Lobato signed for his order to show cause, this merely shows that Romero-Lobato received actual notice of his order to show cause, not that the address to which it was sent is valid such that the presumption of regularity applies.

Under these circumstances, we should remand to the district court to make findings about the adequacy of notice for due process purposes. *See United States v. Perez-Valencia*, 727 F.3d 852, 855 (9th Cir. 2013) (remanding, where the record was insufficient, for the district court to make factual findings).

For its part, the majority briefly acknowledges that Romero-Lobato's order to report for deportation contained an incorrect statement about the available administrative relief. This issue, however, compels further comment. Romero-Lobato's due process rights were violated because he was affirmatively misled by his order to report, which stated that "[a] review of your file indicates there is no administrative relief which may be extended to you." "We have long held there is a violation of due process when the government affirmatively misleads an alien as to the relief available to him." *United States v. Arias-Ordonez*, 597 F.3d 972, 977 (9th Cir. 2010). Indeed, the statement in Romero-Lobato's order to report is virtually identical to the order to report that we held was a due process violation in *Arias-Ordonez*. *See id.*

Just like in *Arias-Ordonez*, and as the government conceded at oral

3

argument, the order to report's representation that "no administrative relief" was available was incorrect because Romero-Lobato had a statutory right to move for rescission of his in absentia removal order. *See* 8 U.S.C. § 1252b(c)(3) (1994) (repealed 1996). Although Romero-Lobato's order to show cause advised him of the correct relief, this did not cure the error because the order to report was sent later, and thus is the most recent representation about Romero-Lobato's rights. In addition, the order to report made a specific representation about Romero-Lobato's eligibility, whereas the order to show cause included a general description of an alien's rights.

The affirmatively misleading statement is all the more troubling because Romero-Lobato was a minor at the time he received both documents. As we have repeatedly recognized, "[t]he "immigration laws are complex, and our precedents recognize that minors face a substantial risk of error in navigating the system." *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1146 (9th Cir. 2019). In light of these facts, it is unreasonable for the district court to expect Romero-Lobato to determine that the order to report's representation about his rights at the time of his removal was in fact incorrect. Accordingly, Romero-Lobato's due process rights were violated.

2.      The majority also concludes that Romero-Lobato failed to show prejudice because he failed to demonstrate that he did not receive adequate notice of his hearing. In doing so, the majority confuses the standards for whether there is

4

a due process violation and whether there is prejudice. The standard for due process asks whether notice was "reasonably calculated" to reach the alien. *See Farhoud*, 122 F.3d at 796. The standard for prejudice asks whether the alien received notice consistent with statutory requirements. In assessing prejudice, the majority finds that notice was reasonable, but it does not address the statutory requirements.

To establish prejudice, a defendant must show that he "had a 'plausible' ground for relief from deportation." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2015) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004)). Relevant here, Romero-Lobato can seek rescission of his removal order in a motion to reopen "filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) of this section." 8 U.S.C. § 1252b(c)(3). Subsection (a)(2) requires that "written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given *by certified mail* to the alien or the alien's counsel of record, if any)." 8 U.S.C. § 1252b(a)(2) (emphasis added).

The only evidence to show that the notice of hearing was mailed was the notice itself—the record contains no certified mail receipts, no mailing envelope, no signature, and no postage. Again, the government at oral argument conceded that Romero-Lobato's A-file lacked any evidence that the notice of hearing was

5

mailed. This absence of evidence stands in stark contrast to Romero-Lobato's order to show cause, for which his A-file contained certified mail receipts. The district court found that the notice of hearing was mailed based on the notice of hearing itself. But the district court made no finding about whether the notice of hearing was personally served or sent by certified mail. For prejudice, mere mailing is insufficient, and the majority reaches a contrary conclusion by neglecting the statutory requirements.

Moreover, Romero-Lobato never made any statements about whether his notice of hearing was personally served or sent by certified mail. Thus, there is nothing in the record indicating that the notice of hearing satisfied the statutory requirements in § 1252b(a)(2). We should therefore remand to the district court to consider whether Romero-Lobato received notice consistent with statutory requirements. *See United States v. Melendez-Castro*, 671 F.3d 950, 955 (9th Cir. 2012) (per curiam) (remanding a defendant's collateral attack to his removal order to the district court because "it did not fully analyze the issue of prejudice").